T.C. Memo. 2002-112

UNITED STATES TAX COURT

NEIL T. NORDBROCK, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

EVELYN R. NORDBROCK, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 12755-00, 12756-00.      Filed May 3, 2002.

Neil T. Nordbrock and Evelyn R. Nordbrock, pro sese.

Vicki L. Miller, and Robert M. Fowler, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined deficiencies and
additions to tax as follows:

Docket No. 12755-00--Neil T. Nordbrock

| Year | Deficiency | Additions to Tax/Penalties, I.R.C. | |
| | | Sec. 6651(a)(1) | Sec. 6654 |
| --- | --- | --- | --- |
| 1995 | $8,497 | $1,903 | $453 |
| 1996 | 8,727 | 2,182 | 465 |
| 1997 | 1,581 | 395 | 85 |

Docket No. 12756-00--Evelyn R. Nordbrock

| Year | Deficiency | Additions to Tax/Penalties, I.R.C. | |
| | | Sec. 6651(a)(1) | Sec. 6654 |
| --- | --- | --- | --- |
| 1995 | $7,860 | $1,744 | $418 |
| 1996 | 8,569 | 2,142 | 456 |
| 1997 | 1,691 | 423 | 90 |

The issues for decision are whether petitioners failed to report taxable income, whether they are entitled to joint filing status, and whether they are entitled to deduct business expenses in excess of those conceded by respondent. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been deemed stipulated pursuant to Rule 91(f). Petitioners resided in Arizona during the years in issue and at the time that they filed their petitions in these cases. Petitioners were married to each other during the years in issue.

During 1995 and for part of 1996, Evelyn R. Nordbrock (Ms. Nordbrock) was employed by Alpha Tax Service as a tax return

preparer. In 1996, she started a tax preparation business in which she prepared tax returns for third parties during 1996 and 1997. During the years in issue, Neil T. Nordbrock (Mr. Nordbrock) was a self-employed accountant.

During the years in issue, petitioners received the following items of income:

| Source | 1995 | 1996 | 1997 |
|---|---|---|---|
| Wages (Alpha Tax Service) | $12,694.41 | $ 778.89 | -- |
| Interest income | 1,313.00 | 5,638.00 | $5,554.00 |
| Dividend income | 15,013.00 | – | 59.00 |
| Capital gain | 10,758.00 | – | -- |
| Rental income | 6,063.00 | 370.00 | -- |
| Cancellation of indebtedness | -- | 1,748.00 | -- |
| Pension distribution | -- | -- | 12,376.00 |
| Nonemployee compensation | 864.00 | 908.00 | 1,583.00 |
| E. Nordbrock tax preparation | 17,911.00 | 27,728.00 | -- |
| N. Nordbrock accounting | 21,179.00 | 14,236.00 | 9,917.00 |
| Swan business receipts | 10,835.28 | -- | -- |
| Danmarkin Investments/ Charles Schwab dividend income | -- | 6,824.00 | -- |
| Olde Discount-dividend income | -- | 3,398.00 | -- |

Under Arizona community property laws, one-half of each of the foregoing items is allocable to each petitioner.

Beginning long before the years in issue, petitioners were involved in continuing disputes with the Internal Revenue Service (IRS). Petitioners were associated with an organization known as the American Law Association, which conducted seminars promoting the creation of foreign trusts for the purpose of decreasing or avoiding taxes. In 1978, petitioners established three foreign business trusts in the Turks and Caicos Islands. Mr. Nordbrock was convicted of violating section 7206(1) for filing false income tax returns for 1981 and 1982. Mr. and Ms. Nordbrock were convicted of violating section 7206(1) for filing a false amended income tax return for 1981. These convictions were affirmed on appeal by the Court of Appeals for the Ninth Circuit in United States v. Nordbrock, 952 F.2d 408 (9th Cir. 1992) (unpublished opinion). In 1992, the District Court for the District of Arizona imposed a lifetime injunction prohibiting Mr. Nordbrock from preparing tax returns for others. The lifetime injunction was affirmed on appeal by the Court of Appeals for the Ninth Circuit in United States v. Nordbrock, 38 F.3d 440 (9th Cir. 1994).

In October 1992, respondent seized property located on Swan Road in Tucson, Arizona. The IRS sent a notice of seizure to Swan Business Organization as nominee of Mr. Nordbrock on October 9, 1992.

In 1994, Mr. Nordbrock commenced a proceeding in bankruptcy. In that proceeding, his attorney was John J. Standifer, Jr. (Standifer).  During 1995, checks totaling $3,060.48 were written to Standifer.  Other checks were written to Standifer and to the bankruptcy trustee in multiples of $36.50 per month as "payments to be applied to Mr. Nordbrock's Chapter 13 Plan".

On April 25, 1996, the IRS sold the Swan property in order to enforce a judgment against Mr. Nordbrock for preparer penalties.  Petitioners commenced litigation challenging the sale and seeking to set it aside.  That litigation was still pending at the time of trial in these cases.

For each of the years in issue, petitioners submitted to the IRS a joint Form 1040, U.S. Individual Income Tax Return.  Next to their signatures on the form, however, was a reference to "Note 1".  Note 1 to each return was a statement as follows:

<u>NOTE 1</u>

This return is not voluntarily submitted, nor is it signed under penalties of perjury.

It is signed and submitted under duress, coercion, and the threat of criminal prosecution.

See 319 US 624-1943 WEST VIRGINIA STATE BOARD OF EDUCATION et al. v. BARNETTE et al.

In the notices of deficiency, respondent determined that petitioners were taxable on the items of income set forth above, less certain of the deductions claimed on the Forms 1040 submitted by them.  Respondent disallowed deductions for legal

expenses, travel expenses, education expenses, meals and entertainment, and similar unsubstantiated items. Respondent also determined that petitioners had other items of income that respondent has since conceded. Respondent determined that petitioners' Forms 1040 were not valid income tax returns. Thus respondent determined the additions to tax in issue and calculated the deficiencies using rates for married persons filing separate returns.

In each of the petitions in these cases, filed December 12, 2000, petitioners attached approximately 150 pages of exhibits purportedly supporting their claims that the notices of deficiency were a continuation of "harassment, lies, and criminal fraud" committed by various Federal employees. Summarizing their allegations, they claim "in excess of 500 criminal violations perpetrated against * * * [them] by more than 150 different federal co-conspirators during the past 17 1/2 years."

OPINION

Respondent moved to strike from the petition and to dismiss for lack of jurisdiction the allegations constituting accusations of criminal conduct. A hearing on respondent's motion was held in Phoenix, Arizona, on March 19, 2001. Respondent's motion was granted. At that time, Mr. Nordbrock requested that any trial be postponed for "at least 90 days". Petitioners were advised that

the hearing was only for the purposes of the motion and the trial had not been set.

By notice served August 24, 2001, the case was set for trial in Phoenix on January 28, 2002. Attached to the Notice Setting Case for Trial was a Standing Pre-Trial Order including, among other things, the following paragraphs:

> <u>Continuances will be granted only in exceptional circumstances</u>. See Rule 133 (formerly Rule 134), Tax Court Rules of Practice and Procedure. Even joint motions for continuance will not routinely be granted.

> \* \* \* \* \* \* \*

> ORDERED that all facts shall be stipulated to the maximum extent possible. All documentary and written evidence shall be marked and stipulated in accordance with Rule 91(b), unless the evidence is to be used to impeach the credibility of a witness. Objections may be preserved in the stipulation. If a complete stipulation of facts is not ready for submission at trial, and if the Court determines that this is the result of either party's failure to fully cooperate in the preparation thereof, the Court may order sanctions against the uncooperative party. Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. \* \* \*

On December 14, 2001, respondent filed a Motion to Show Cause Why Proposed Facts in Evidence Should Not Be Accepted as Established, recounting petitioners' failure to address respondent's proposed stipulation or to respond to respondent's

informal and formal discovery. The motion to show cause also referred to petitioners' attempt to secure by formal discovery the "oaths of office" of respondent's counsel and of the Chief Judge and of the judicial officers to whom these cases had been assigned for hearing on respondent's motion to dismiss and for the trial scheduled for January 28, 2002. On December 17, 2001, respondent's Motion to Compel Responses to Respondent's Interrogatories and Motion to Compel Production of Documents were filed. On December 17, 2001, an Order to Show Cause was issued. On December 18, 2001, respondent's discovery motions were granted.

On December 31, 2001, Respondent's Status Report was filed. Respondent's status report attached a copy of a request for a 90-day continuance served by petitioners but not as of then received by the Court. Respondent objected to continuance, recounting the history of the cases and pointing out that petitioners' grounds for continuance were not well taken. Respondent also referred to petitioners' continuing failure to respond to the outstanding discovery.

On January 9, 2002, the Court instituted a conference telephone call among the parties and the Court to advise petitioners that their request for a continuance would not be granted. The parties also discussed the outstanding discovery Orders and response to the Order to Show Cause. The Court

advised petitioners of the necessity of presenting documentation that would substantiate the deductions to which they might be entitled for the 3 years in issue.  Thereafter, the Court received from petitioners documents demanding production of copies of subscribed oaths of office; their demands were untimely, were not relevant to the subject matter involved in the pending cases, and were not likely to lead to the discovery of admissible evidence.  On January 14, 2002, petitioners filed a Motion to Dismiss claiming that neither respondent nor the Court had "proven jurisdiction" in these cases.  That motion was denied.  The Court has jurisdiction in these cases as a result of timely filed petitions from valid notices of deficiency.  Secs. 6212, 6213, and 6214.  After invoking our jurisdiction in a deficiency case, petitioners may not just change their minds and decide they do not want to be here.  Stevens v. Commissioner, 709 F.2d 12 (5th Cir. 1983), affg. T.C. Memo. 1982-352; Dorl v. Commissioner, 57 T.C. 720 (1972), affd. per curium 507 F.2d 406 (2d Cir. 1974); see also sec. 7459(d); Estate of Ming v. Commissioner, 62 T.C. 519 (1974) (a deficiency case commenced by a taxpayer cannot be voluntarily dismissed without entry of a decision on the merits).

On January 16, 2002, Respondent's Motion in Limine to Exclude Untimely Identified Witnesses and Untimely Exchanged Documents was filed.  That motion recounted petitioners'

continuing failure to provide documents concerning their claimed deductions other than a few documents that related to expenses for 1995. The motion also pointed out petitioners' failure to submit a trial memorandum identifying witnesses as required by the Court's Standing Pre-Trial Order. Respondent's motion was set for hearing on January 28, 2002. When the cases were called for trial on January 28, petitioners filed a Renewal of Motion to Dismiss, repeating and expanding on scurrilous accusations against respondent's counsel and the Court and claiming that the Court lacked jurisdiction because neither respondent's counsel nor the Court would provide copies of their oaths of office to petitioners. Petitioners' motion was denied. Respondent's motion in limine was granted.

The cases proceeded to trial on January 28. Petitioners presented neither evidence nor argument that respondent's determination of specific items of income was erroneous. The facts that were deemed stipulated connected petitioners to items of income either by specific receipts or by bank deposits into accounts under the control of petitioners. See Delaney v. Commissioner, 743 F.2d 670 (9th Cir. 1984), affg. T.C. Memo. 1982-666; Tokarski v. Commissioner, 87 T.C. 74 (1986). The testimony of Mr. Nordbrock and the documents presented for 1995 related to legal and other expenses of filing his personal bankruptcy, repairs or improvements to petitioners' home, travel

expenses, and expenses of attending seminars.  Petitioners bear the burden of proving that they are entitled to deductions.  See, e.g., Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. T.C. Memo. 1972-133.

It is apparent from the record in this case that petitioners are not entitled to the benefits of the burden of proof provisions of section 7491(a).  They have failed to respond to reasonable requests for information, documents, meetings, and interviews, and they have failed to comply with Court orders that they produce documents and answer questions.  They have not presented any substantiation with respect to deductions for 1996 and 1997.  They have not produced credible evidence on disputed issues of fact.  In view of their history as tax return preparers, they should have been familiar with the types of records required and the legal requirements for deductions. Instead of substantiating their deductions, they have made unwarranted accusations against those charged with determining their tax liability.

Mr. Nordbrock testified only after the Court told him that he would have to explain the documents that had been produced for 1995 before any deductions could be allowed.  His testimony was vague and conclusory and marked by failure to remember specific details on cross-examination.  Ms. Nordbrock declined to testify.

Petitioners contend that the bankruptcy proceedings were

commenced in an attempt by petitioners to save business property from seizure by the IRS. Mr. Nordbrock testified that the only creditor in the bankruptcy was the IRS, and the debt to the IRS resulted from $75,000 in preparer penalties. See United States v. Nordbrock, 38 F.3d 440 (9th Cir. 1994). Respondent argues that these expenses are personal expenses and not deductible business expenses. Petitioners have not persuaded us that the bankruptcy-related expenses were ordinary and necessary business expenses and have not provided us with a basis for allocating the fees between personal services and business services. Petitioners presented copies of checks that were payable to the attorney who filed the bankruptcy proceeding. They did not, however, present any invoices that explained the services provided by the attorney. See In re Collins, 26 F.3d 116 (11th Cir. 1994); Dowd v. Commissioner, 68 T.C. 294, 303-304 (1977).

Some of the payments claimed as deductible were made to the trustee in bankruptcy. Those payments relate to the preparer penalties, inasmuch as petitioner testified that the only creditor in the bankruptcy was the IRS and that the seizure of property that he was trying to defeat was for $75,000 in unpaid preparer penalties that were assessed against him. The nature of the payments is not clear. If the payments were for monthly fees, as petitioner testified, they suffer from the same infirmity as the legal fees. If they were payments on account of

the penalties and any interest related thereto, they are not deductible. See <u>Tippin v. Commissioner</u>, 104 T.C. 518, 528-529 (1995). In any event, petitioners have failed to prove that the payments are deductible.

Mr. Nordbrock testified that some of the seminar expenses and travel expenses were for an investment seminar related to Ms. Nordbrock's investments. Respondent's theory is that the seminars attended by petitioners, including travel to those seminars, related to petitioners' tax protest activities. Some of the exhibits support respondent's argument. A payment of $480 claimed as legal and professional fees was, according to Mr. Nordbrock's testimony, for authoring a letter to the IRS that challenged the "true identity and legal affiliation of the entity known as the Internal Revenue Service". In any event, Mr. Nordbrock was enjoined during the years in issue from preparing tax returns on behalf of clients. Ms. Nordbrock did not testify, although most of the checks received in evidence were signed by her. We are not persuaded that the checks represent payments for deductible business expenses. Those expenses relating to investments, to personal taxes, or to Ms. Nordbrock's expenses as an employee of Alpha Tax Services would be deductible, if at all, under section 212 and only to the extent that the total exceeded 2 percent of petitioners' adjusted gross income. See sec. 67(a). The amounts identified by

petitioners for seminars totaled less than $500 and do not meet that threshold. The travel expenses claimed by petitioners were not substantiated as required by section 274(d). No contemporaneous documents or other reliable evidence corroborated the alleged business purpose of the travel.

Petitioners contend that the repairs and maintenance expense related to an office in their home. The only evidence on this issue is Mr. Nordbrock's uncorroborated and conclusory testimony. The documentation that was presented consisted of checks without invoices and credit card charges, and the documentation showed no allocation between an alleged office in the home and the personal residential quarters of petitioners. Petitioners failed to present reliable or persuasive evidence that would satisfy the conditions of section 280A(c).

After examination of the documents submitted by petitioners and petitioners' testimony, we conclude that any additional expenses beyond those conceded by respondent are not adequately substantiated.

There is no excuse for petitioners' failure to present substantiating materials during the administrative stages and for more than a year while these cases were pending. They disregarded the Court's order that they produce documents for 1996 and 1997. They are familiar with the consequences of failing to produce documents when required by law or Court order

to do so.  See United States v. Nordbrock, supra.  They refused to answer interrogatories asking for identification of items of disputed income and claimed deductions, notwithstanding a Court order that they answer the interrogatories.  When their efforts to delay trial failed, they sought dismissal of the cases.  On the entire record in these cases, we infer that evidence that petitioners refused to produce would have been unfavorable to their claims of error in respondent's determinations.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

The Forms 1040 submitted by petitioners for the years in issue were not valid tax returns.  See Williams v. Commissioner, 114 T.C. 136 (2000).  As a result, petitioners are not entitled to joint return rates.  See sec. 6013(b); Thompson v. Commissioner, 78 T.C. 558, 561–562 (1982).  Based on the Forms 1040 they submitted, the additions under section 6651(a)(1) are appropriate.  Williams v. Commissioner, supra.  The section 6654 addition to tax applies absent exceptions not shown to exist in these cases.  Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).  The tax returns and the transcripts of petitioners' accounts received in evidence satisfy respondent's burden of production with respect to the additions to tax.

To take account of respondent's concessions,

Decisions will be entered under Rule 155.